IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-01436-CMA-MJW

KEITH CLAYTON BROOKS, JR.,

Plaintiff,

v.

STEVE GAENZLE, et al.,

Defendants.

---

**RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Docket No. 154)**

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to a General Order of Reference to

United States Magistrate Judge (Including Dispositive Motions) issued by former Chief

Judge Edward W. Nottingham on September 13, 2007 (Docket No. 11). The case was

reassigned to Judge Christine M. Arguello on October 31, 2008 (Docket No. 168).

Plaintiff filed his original complaint (Docket No. 3) and first amended complaint

(Docket No. 5) without counsel. Pro bono counsel was then appointed to represent the

plaintiff. (Docket Nos. 29, 33-36). With leave of court, plaintiff, through counsel, filed a

Second Amended Complaint (Docket No. 50), which is brought pursuant to 42 U.S.C.

§§ 1983, 1985, and 1988, and Colorado law. Plaintiff asserts the following in that

pleading.

On October 17, 2005, plaintiff and an acquaintance, Nick Acevedo, approached a private residence with the intent to burglarize the home. Allegedly unbeknownst to plaintiff, Acevedo was armed with a handgun. A neighbor who witnessed the two forcibly enter the garage through a side door called 911.[1] Defendant Sheriff Deputies Gaenzle and Smith responded to the call. They approached the still-open side garage door and then burst through it with weapons in a ready position. They observed Acevedo, a white male, rummaging through articles in the garage. Acevedo quickly ran into the house through a door connected to the kitchen, which he closed behind him. Gaenzle kicked at the door, which opened part way. He could see Acevedo's shoulder trying to force the door shut. Gaenzle kicked at the door twice more, and each time he could see Acevedo's clothing and his shoulder forcing the door shut. After the third kick, a bullet was fired through the door, allegedly by Acevedo. The bullet passed by Gaenzle.

Plaintiff was inside the house. He was allegedly alarmed by the sound of Gaenzle kicking the door and the sound of voices, left a back bedroom, and came into the kitchen. Allegedly just as plaintiff arrived, Acevedo pulled a gun from inside his clothing and fired the shot through the door. Acevedo turned and ran out a sliding glass door that is located in the kitchen/dining room area and into the backyard. Moments later, plaintiff ran out through that door into the backyard.

---

[1]In his statement of fact in his Response to the instant summary judgment motion, plaintiff states that that neighbor, Tim McElroy, informed dispatch that he had seen two suspects, a white male and a black male, approach and forcibly enter the home. (Docket No. 157 at 6). While outside the garage, defendant Gaenzle thought he could hear voices from two, possibly three, people inside the residence.

After the gunshot, Gaenzle and Smith retreated back out the side garage door, which allegedly gave them an obstructed view of the backyard. They saw a black male (the plaintiff) run across the yard and then start to climb a six-foot high fence. Plaintiff claims he was unarmed and fleeing. Gaenzle fired one shot at plaintiff as he climbed the fence, striking plaintiff in the lower back. Despite his wound, plaintiff climbed the fence and fled the scene.[2] Plaintiff claims that to justify their unlawful shooting, defendants Geanzle and Smith falsely stated in their reports that plaintiff was armed.

Based upon the above allegations, plaintiff raised four claims, but certain claims were dismissed on Plaintiff's Stipulated Motion to Dismiss. (See Docket No. 156 dismissing without prejudice the claims contained in paragraph 23 of Count III and the claims in Count IV of the Plaintiff's Second Amended Complaint, which were the claims against El Paso County, Sheriff Maketa, and the El Paso County Sheriff's Office). First, Gaenzle allegedly violated plaintiff's clearly-established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizures of his person by intentionally or with deliberate indifference using excessive and deadly force to effect plaintiff's arrest in violation of 42 U.S.C. § 1983. (Claim I). Second, Gaenzle allegedly assaulted and battered plaintiff. (Claim II). Third, Gaenzle and Smith allegedly violated plaintiff's clearly-established right under the Fourteenth

---

[2]According to plaintiff in his Response to the summary judgment motion, he joined up with Acevedo and fled the scene in a vehicle. Plaintiff was apprehended three days after the burglary. Furthermore, when law enforcement ultimately caught up with Acevedo thirteen days after plaintiff's arrest, Acevedo was shot and killed when he attempted to shoot the arresting officer. According to plaintiff, when Acevedo died, he was clutching the gun used to fire on the defendants during the burglary. (Docket No. 157 at 7-8).

Amendment to due process by intentionally and with deliberate indifference making false reports and statements in official proceedings in order to justify Gaenzle's unconstitutional use of excessive and deadly force to effect plaintiff's arrest, all in violation of § 1983. (Claim III). Also, Gaenzle and Smith allegedly conspired to make false reports and statements in the official proceedings investigating Gaenzle's shooting of the plaintiff in violation of 42 U.S.C. § 1985. (Claim III).

In the Amended Answer to Second Amended Complaint and Counterclaim (Docket No. 136), defendant Board of County Commissioners of El Paso County raised a counterclaim to obtain reimbursement of cost of care pursuant to § 17-10-101, et seq., C.R.S.

Discovery has been completed in this case. (See Docket No. 129). Now before the court is the defendants'[3] Motion for Summary Judgment (Docket No. 154). The court has reviewed the motion, the response (Docket No. 157), and the reply (Docket No. 165). In addition, the court has considered the court's file and applicable statutes and case law. The court now being fully informed makes the following findings, conclusions of law, and recommendation.

Defendants assert the following in their motion for summary judgment: plaintiff's first claim for relief should be dismissed as there was no seizure within the meaning of the Fourth Amendment, the force was objectively reasonable, and Deputy Gaenzel is entitled to qualified immunity as to the first claim for relief; plaintiff's second claim, a state tort claim, should be dismissed on the basis of the provisions of the Colorado

---

[3]At the time the motion was filed, the claims against defendants Maketa, El Paso County Sheriff's Office, and El Paso County had not been dismissed.

Governmental Immunity Act ("CGIA"), or alternatively because the plaintiff cannot recover for damages sustained in the commission of a felony, or alternatively because Gaenzle was justified in using lethal force in attempting to prevent plaintiff's escape; plaintiff's claim for malicious prosecution is stated only as a Fourteenth Amendment claim; there is no evidence that Gaenzle or Smith intentionally made a false statement or false reports; there was sufficient probable cause, absent statements of Gaenzle and Smith, that plaintiff was armed at the time he was shot; and there was no conspiracy by Gaenzle and Smith to make false reports or false statements.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial."  Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'"

Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . . The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . . Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

**CLAIM ONE**

In his first claim for relief, plaintiff asserts that defendant Gaenzle violated plaintiff's clearly-established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizures of his person by intentionally or with deliberate indifference using excessive and deadly force to effect plaintiff's arrest in violation of 42 U.S.C. § 1983. "The Fourth Amendment protects individuals against 'unreasonable searches and seizures.' To state a claim of excessive force under the Fourth Amendment, a plaintiff must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" Bella v. Chamberlain, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing Brower v. County of Inyo, 489 U.S. 593, 599 (1989)). **Lack of a Seizure.** Defendants first assert that the plaintiff's first claim for relief should be dismissed because there was no "seizure" within the meaning of the Fourth Amendment. Substantially for the reasons asserted by defendants in their motion and reply, this court agrees that there was no "seizure." "A Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007); Brower v. County of Inyo, 489 U.S. 593, 596-97, 599 (1989) (Seizure occurred when police officers who sought to stop plaintiff by means of a roadblock and succeeded in doing so. "Violation of the Fourth Amendment requires and intentional acquisition of physical control. . . . We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result."). Here, plaintiff's movement was not terminated as a result of the gunshot fired

by Gaenzle. Although shot, plaintiff fled, escaped the attempted arrest, and remained at large for three days before his apprehension.

**Objective Reasonableness of the Force Utilized.** In any event, even if there was a "seizure," this court further agrees with the defendants that plaintiff's first claim should be dismissed because under the totality of the circumstances, the force used was objectively reasonable.

"[A] claim of excessive force in the course of making [a] . . . seizure of [the] person . . . [is] properly analyzed under the Fourth Amendment's objective reasonableness standard." Scott v. Harris, 127 S. Ct. at 1776 (quotations omitted). "At the summary judgment stage, . . . once [the court has] determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record* . . . the reasonableness of [defendant's] actions-or . . . '[w]hether [defendant's] actions have risen to a level warranting deadly force,' . . . is a pure question of law." Id. at 1776 n.8.

"In limited circumstances . . . , the use of deadly force to apprehend a fleeing felon is constitutionally permissible." Ryder v. City of Topeka, 814 F.2d 1412, 1417 (10th Cir. 1987). "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." Id. at 1418. "[T]here are two basic situations that would justify an officer's belief that a fleeing suspect poses a threat of serious physical harm: (1) where the suspect has placed the officer in a dangerous, life threatening situation; or (2) where the suspect is fleeing from the commission of an inherently violent crime. This latter situation does not require that the officer's life

actually be threatened by the suspect.  Rather, the officer is allowed to infer that the suspect is inherently dangerous by the violent nature of the crime."  Id. at 1419.  "Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, it is not unconstitutionally unreasonable to prevent escape by using deadly force."  Tennessee v. Garner, 471 U.S. 1, 11 (1985).

Here, defendants correctly assert that the issue of whether plaintiff committed a crime involving the infliction or threatened infliction of serious bodily harm has already been established inasmuch as plaintiff was convicted of, *inter alia*, criminal attempt to commit murder in the first degree, after deliberation, of a police officer; criminal attempt to commit murder in the second degree; assault in the first degree; and first degree burglary-assault or menace.  Furthermore, this court finds that considering the "totality of the circumstances," the use of deadly force was objectively reasonable.  Gaenzle had probable cause to believe that the plaintiff had just committed a crime involving the threatened infliction of serious physical harm.  A shot had just been fired from inside the house, through the door, toward the officers in the garage while one of the officers was attempting to kick the door open.  The bullet apparently passed between the officers at the head and shoulder level.  Shrapnel struck them both.  Under the circumstances, Gaenzle could have reasonably feared for his safety or for the safety of those in plaintiff's path as plaintiff fled.

While plaintiff contends that he did not fire the shot and that he did not possess a weapon as he fled the scene and climbed over the backyard fence,[4] and defendants

---

[4]This court does not agree with plaintiff that his acquittal of possession of a firearm during the burglary proves that he did not fire on the deputies and/or that he was

assert plaintiff was armed and they do not know who shot the bullet through the door, these disagreements do not raise issues of material fact that preclude entry of summary judgment for defendant Gaenzle. "There might be numerous situations that would justify a police officer's belief that a suspect was armed and that he posed an immediate threat to the officer, even though the suspect was not in fact armed. Certainly whether a suspect is armed is a relevant factor in determining whether the suspect poses an immediate danger. A per se rule, however, that a police officer may never employ deadly force unless attacked by a suspect possessing a deadly weapon would place a police officer in a dangerous and unreasonable situation. Therefore, . . . whether a particular seizure is reasonable is dependent on the 'totality of the circumstances,' . . . and not simply on whether the suspect was actually armed. " Ryder v. City of Topeka, 814 F.2d 1412, 1419 n.16 (10th Cir. 1987). See Blossom v. Yarbrough, 429 F.3d 963, 968 (10th Cir. 2005) ("The fact that [the suspect] was unarmed is not outcome determinative."). Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). A determination of reasonableness must include consideration of "the fact that police officers are often forced to make split-second judgments –in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. at 397. This was precisely the situation here. The entire chain of events rapidly transpired, and defendants had to make split-second judgments.

---

unarmed when Deputy Gaenzle fired his weapon at him because this case and the criminal case have different standards of proof.

This court does not agree with plaintiff that <u>Tennessee v. Garner</u>, 471 U.S. 11 (1985), involved the particularized factual setting presented by this case.  It is true that like the plaintiff here, the suspect in <u>Garner</u> was fleeing the scene of a burglary.  In <u>Garner</u>, however, the officer was "reasonably sure" and "figured" that the suspect was unarmed.  Therefore, in <u>Garner</u> the suspect did not pose an immediate threat to the officer or a threat to others.  In sharp contrast, in the instant case, while the entire episode also started as a simple burglary, the situation rapidly escalated when the shot was fired from within the house through the door at the defendants, which constituted probable cause for the officers to believe that the suspects posed a threat of serious physical harm.  This was not a simple, non-violent house burglary.  Instead, plaintiff was fleeing from a crime that involved the infliction or threatened infliction of physical harm through the use of a firearm.  In sum, there was not excessive force under the constitutional standard in the instant case.

**Qualified Immunity.**  Defendants also assert that Gaenzle is entitled to qualified immunity as to plaintiff's first claim for relief.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (holding that the procedure mandated in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), "should not be regarded as an inflexible requirement . . . .").  It "balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  <u>Id.</u>  "Qualified immunity shields an officer from suit when [he] makes a

decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004). "Because the focus is on whether the officer had fair notice that [his] conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at that time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation." <u>Id.</u>

When a defendant raises a qualified immunity defense, the plaintiff "bears the burden of showing that: (1) the defendants' actions violated a constitutional or statutory right; and (2) the right was clearly established and reasonable persons in the defendants' position would have known their conduct violated that right." <u>Cruz v. City of Laramie, Wyo.</u>, 239 F.3d 1183, 1187 (10th Cir. 2001). Here, this court need not consider the second factor because based upon the findings above, plaintiff has failed to satisfy the first factor inasmuch as Gaenzle's use of force was objectively reasonable under the totality of the circumstances and thus did not violate a constitutional or statutory right. Even if it is necessary for this court to proceed to the second factor, this court finds that at the time of the incident, the law as set out in <u>Ryder</u> and <u>Garner</u> would permit an officer to infer that the suspect was inherently dangerous by the violent nature of the crime committed and could use deadly force to apprehend a felon fleeing from such crime. This court agrees with defendants that Gaenzle would be entitled to qualified immunity because it was reasonable for him to understand the law at the time of the incident to permit the use of deadly force.

**CLAIM TWO**

In his second claim, plaintiff asserts that Gaenzle assaulted and battered him, and as a result, plaintiff suffered damages. Defendants assert in their motion that as a state tort claim, the plaintiff's assault and battery claim should be dismissed on the basis of the provisions of the CGIA, § 24-10-101, et seq., C.R.S., or alternatively because the plaintiff cannot recover for damages sustained in the commission of a felony, or alternatively because Gaenzle was justified in using lethal force in attempting to prevent plaintiff's escape.

The CGIA provides specific circumstances under which immunity can be waived, § 24-10-106, C.R.S., and defendants assert that none of the stated circumstances apply to the incident at issue here. Plaintiff, however, contends that the CGIA does not shield Gaenzle from liability on this claim because the CGIA's immunity does not extend to willful and wanton acts of tortious misconduct by individual officers. § 24-10-118(2)(a), C.R.S. In their reply, defendants note that the CGIA provides that the factual basis of willful and wanton conduct must be particularly pled, § 24-10-110(5)(a) and (b), C.R.S., and defendants contend such was not done so here, even with the paragraphs incorporated into the assault and battery claim. Instead, they assert, plaintiff merely made a conclusory allegation that Gaenzle "intentionally or with deliberate indifference" used excessive and deadly force. In his first claim (paragraph 17), plaintiff alleges that "Gaenzle violated plaintiff's clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable seizures of his person by **intentionally or with deliberate indifference** using excessive and

deadly force to effect plaintiff's arrest in violation of 42 USC § 1983." (Docket No. 50 at

4, ¶ 17) (emphasis added).

This court finds that the plaintiff has adequately plead willful and wanton conduct

in claim two. As explained by Judge Babcock in Buckley v. Board of County Comm'rs

of County of El Paso, 2005 WL 2359475 (D. Colo. Sept. 19, 2005):

> state law immunity does not extend to public employees for their willful
> and wanton conduct. C.R.S. § 24-10-118(2). . . . Plaintiffs' claim for
> intentional infliction of emotional distress does not use the precise words
> "willful and wanton conduct," but uses the similar phrases "deliberate
> indifference" and "reckless." While this section of the Colorado Code does
> not specifically define "willful and wanton," Colorado courts have adopted
> definitions of "willful and wanton" to include actions conducted "heedlessly
> and recklessly," *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994), and
> with "conscious disregard for the safety of others." *Peterson v. Arapahoe
> County Sheriff*, 72 P.3d 440, 444 (Colo. Ct. App. 2003). Plaintiff here
> alleges that defendants deliberately initiated actions against them without
> cause in retaliation for their prior acts of representation against El Paso
> County. I find and conclude that plaintiffs have plead conduct that
> satisfies the state law definition of "willful and wanton" conduct. Thus,
> immunities under state law do not bar these claims.

Id. at *12.

Nevertheless, this court finds that defendants correctly assert that pursuant to §

13-80-119, C.R.S., plaintiff cannot recover for damages sustained during the immediate

flight from a felony. That section provides in pertinent part:

> (1) No person . . . shall have a right to recover damages sustained during
> the commission of or during immediate flight from an act that is defined by
> any law of this state or the United States to be a felony, if the conditions
> stipulated in this section apply.

> (2)(a) The court shall dismiss the action for damages and award attorney
> fees and costs to the person against whom the action was brought if the
> person bringing the action . . . has been convicted of the felony . . . unless
> the damage was caused by the willful and deliberate act of another
> person; except that such exception shall not apply if the person who
> caused the injuries acted:

(I) Under a reasonable belief that physical force was reasonable and appropriate to prevent injury to himself or herself or to others, using a degree of force that he or she reasonably believed necessary for that purpose; or

(II) Under a reasonable belief that physical force was reasonable and appropriate to prevent the commission of a felony, using a degree of force that he or she reasonably believed necessary for that purpose; or

(III) As a peace officer, as such person is described in section 16-2.5-101, C.R.S., acting within the scope of the officer's employment and acting pursuant to section 18-1-707, C.R.S.

§ 13-80-119, C.R.S.

Here, plaintiff was convicted of various felonies, and there is no dispute that he was fleeing from the felonious acts when he was shot by Gaenzle. In addition, as found above, the force utilized was objectively reasonable under the constitutional standard. Therefore, plaintiff's claim for assault and battery is barred and should be dismissed.

Based on the findings above, there is no need to consider defendants' third basis for dismissal of claim two, namely, that it should be dismissed pursuant to § 18-1-707, C.R.S., because it purportedly justifies an officer's use of "reasonable and appropriate physical force" when the officer "reasonably believes" that it is necessary.

**CLAIM THREE**

In his third claim, plaintiff first asserts that Gaenzle and Smith violated his clearly-established right under the Fourteenth Amendment to due process by intentionally and with deliberate indifference making false reports and statements in official proceedings in order to justify Gaenzle's unconstitutional use of excessive and deadly force to effect plaintiff's arrest, all in violation of § 1983. Second, he contends that they conspired to make false reports and statements in the official proceedings investigating Gaenzele's

shooting of the plaintiff, in violation of 42 U.S.C. § 1985.

Due Process/Malicious Prosecution Claim.  Defendants contend in their motion that the plaintiff's third claim, which is stated only as a claim under the Fourteenth Amendment, appears to be one grounded in a claim of malicious prosecution.  They further assert that a malicious prosecution claim is not recognized under the Fourteenth Amendment, and thus this third claim for relief should be dismissed.  In response, plaintiff states that he "does not claim that Gaenzle's and Smith's false reporting led to his unreasonable seizure (since [plaintiff] was subject to arrest for his other crimes regardless of what Gaenzle and Smith reported) in violation of the Fourth Amendment; [he] claims that Gaenzle and Smith subjected him to a trial on false charges, and placed him in jeopardy of an enhanced sentence.  This misconduct occurred in the post-arrest, pre-trial, and trial phases which is cognizable under the Fourteenth Amendment."  (Docket No. 157 at 29-30) (citing Pierce v. Gilchrist, 359 F.3d 1279, 1285-86 (10th Cir. 2004); Becker v. Kroll, 494 F.3d 904, 924 (10th Cir. 2007)).

This court finds that under the circumstances presented here, where defendants allegedly subjected plaintiff to a trial on false charges and allegedly placed him in jeopardy of an enhanced sentence,[5] the alleged false reporting would be properly raised as a Fourteenth Amendment claim.  The Tenth Circuit has recently stated with respect to such a malicious prosecution claim:

> In this circuit, when addressing § 1983 malicious prosecution claims, we use the common law elements of malicious prosecution as the "starting point" of our analysis; however, **the ultimate question is whether**

_____

[5]It is undisputed, however, that plaintiff did not go to trial on the charge of possession of a weapon by a previous offender under § 18-1.3-801, C.R.S.

**plaintiff has proven the deprivation of a constitutional right**. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). **We look to both the Fourth and Fourteenth Amendments.** *See Pierce*, 359 F.3d at 1285-86 ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.") (citations and footnote omitted).

The elements of the common law tort of malicious prosecution, as applicable in a § 1983 claim, are (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages. *Pierce*, 359 F.3d at 1291-1297. . . .

Novitsky v. City of Aurora, 491 F.3d 1244, 1257-58 (10th Cir. 2007) (emphasis added).

See Becker v. Kroll, 494 F.3d 904, (10th Cir. 2007) ("We have repeatedly recognized in this circuit that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be 'the Fourth Amendment's right to be free from unreasonable seizures.'").

Defendants further assert that there is no evidence that Gaenzle or Smith intentionally made a false statement or a false report. Both defendants contend that any statements or reports they made pertaining to plaintiff being armed when he was shot were made truthfully and with the intent to bring plaintiff to justice for the acts committed by plaintiff during the incident. They argue that even if the plaintiff asserts that he was not armed at the time he was shot, such assertion does not establish the malicious intent to make out a *prima facie* case.

The court finds that there is an issue of fact concerning whether defendants' made a false statement or report. Nevertheless, based on the findings below, this court finds that this issue of fact does not preclude entry of summary judgment for defendants

because this court agrees with defendants' final argument that there was sufficient probable cause, absent statement of Gaenzle and Smith, that plaintiff was armed at the time he was shot.

Defendants have shown that there was evidence developed during the investigation, independent of Gaenzle's and Smith's statements, that the plaintiff possessed a weapon at the time of the burglary and/or that he shot at the deputies at the time of the burglary. Such evidence is listed under paragraph number 20 in defendants' Statement of Undisputed Material Facts. (Docket No. 154 at 5-8). In his Response to paragraph 20, plaintiff states ""[a]dmit that such evidence was developed, but dispute the reliability or veracity of the evidence as argued more fully in **Part C** herein." (Docket No. 157 at 5) (emphasis in original).

Included in that evidence was the following. First, there is a Narrative dated October 20, 2005, by Detective G. Cliff Porter regarding his interview with the plaintiff at the hospital shortly after plaintiff was apprehended. Porter reports that plaintiff initially admitted during the interview that both he and Acevedo were armed with 9 mm pistols.[6] (Docket No. 154-9 at 8). Second, there is a Narrative by Detective Ralph Losasso, also dated October 20, 2005, pertaining to an interview he had with Amanda Hall during which Hall admitted that on the day of the incident, she saw plaintiff sitting in the back

---

[6]The report further states that plaintiff changed that statement when asked for a description of the gun he was carrying. Plaintiff then denied he was carrying a gun and said that "Ace" (Acevedo) was carrying a gun and that plaintiff could not describe what it looked like. Later in the report it is stated that plaintiff "described the gun carried by Mr. Acevedo as a Smith and Wesson 9mm. He thought it was dark colored . . . ." When asked about the gun or guns used during the burglary, plaintiff reported said, "The only gun that's mine is the rifle in the trunk of the car you caught me in. . . . [it]s] just a little rifle," and "he was not going to use it for anything 'really.'" (Docket No. 154-9 at 8).

seat of a car with a rifle in his hands, and plaintiff told her that he shot at police as they attempted to apprehend him during the incident.[7] (Docket No. 154-9 at 11-14). Third, there is a Narrative, also dated October 20, 2005, by Detective Ricky Frady who accompanied Losasso during his interview of that date with Hall. Frady confirms the statements made by Hall during her interview pertaining to plaintiff's possession and use of a gun.[8] (Docket No. 154-9 at 16). Fourth, there is a Narrative by Detective Michael Simler, also dated October 20, 2005, pertaining to an interview he conducted with Daniel Mileto, an accomplice to many of the acts committed by plaintiff after the incident. Simler reports that during the interview, Mileto admitted that on the date of the incident, plaintiff told him that plaintiff had fired upon the police with a handgun during his confrontation with the police during the burglary and that some time after the burglary, plaintiff and Acevedo asked Hall to obtain additional firearms for them. (Docket No. 154-9 at 18-20). Fifth, there is an Office of the District Attorney Investigative Report by Investigator Randy Stevenson dated October 21, 2005, pertaining to an interview he conducted with Mileto on that date during which Mileto stated that on the day of the incident, plaintiff told Mileto that plaintiff "had shot at the cop then the cop shot him." (Docket No. 154-9 at 22-25). Sixth, there is another report

---

[7]The report states that Hall said plaintiff "had told her they were in the middle of robbing someone's house when the cops had shown up and broke in the door. She said [plaintiff] told her he started shooting and they began to run and jump over a fence, when a cop shot him in the 'ass.'" (Docket No. 154-9 at 14).

[8]Frady states in his report that "[b]ased on the information obtained from Ms. Hall and from the motel room at the Fountain Inn, I prepared a warrant for the arrest of [plaintiff] for attempted first degree murder, first degree burglary, and criminal mischief. I presented the arrest warrant to the Honorable Evelyn Sullivan, who found probable cause for the arrest and signed the warrant." (Docket No. 154-9 at 16).

by Investigator Stevenson, dated October 25, 2005, pertaining to an interview he had

that day with plaintiff's former girlfriend, Sara Renee Henry, who reportedly stated that

she spoke with Mileto on October 18, 2005, and Mileto informed her that plaintiff told

him that plaintiff was the one who shot at the deputy when they were caught in the

burglary.  (Docket No. 154-9 at 26-28).  Seventh, there is another report by Investigator

Stevenson dated October 28, 2005, regarding a telephone interview he had that day

with Hall during which Hall reportedly stated that plaintiff told her on October 18, 2005,

that he had shot himself accidentally with an unregistered handgun and he was out on

parole and thus could not go to the hospital or report the wound because he would be in

big trouble.  He later told her that he and "Ace" were "involved in a robbery and as they

were fleeing the scene [plaintiff] got shot in the ass by a cop after [plaintiff] shot at the

cop."  (Docket No. 154-9 at 31).  According to the report, "Ms. Hall said that [plaintiff]

was the one that told her that he had shot at the cop and that he described to her that

the karma worked fast that time, that just a few seconds after he fired a shot at the cop

the cop shot him."  (Docket No. 154-9 at 31).  Eighth, there is an Office of the District

Attorney Investigative Report by Investigator Greg Melton dated November 14, 2005,

pertaining to an interview he had that date with an acquaintance of Acevedo, Kelly

Love, who stated that on October 17, 2005, sometime after the incident, plaintiff arrived

at her house with Acevedo at which time Love saw plaintiff in possession of a black .45

caliber black pistol, ten to twelve inches in length with a plastic-type grip, shoved in the

front of his pants.  (Docket No. 154-9 at 35).  In an investigative report written the

following day, Melton noted that Acevedo told her that plaintiff "'was supposed to be

watching the front of the house and wasn't.  The cops came and [plaintiff] shot at them'"

and that "Acevedo said he was in the back of the residence when he and [plaintiff] were burglarizing and he ran when the police arrived." (Docket No. 154-9 at 38).

Defendants have also submitted the Affidavit of Assistant District Attorney Amy Mullaney (Docket No. 154-9) in which she states in pertinent part:

> 5.     The charges for sentencing enhancement under C.R.S. § 18-1.3-406 were based on information that [plaintiff] used or possessed and threatened the use of a deadly weapon during the commission of the crimes arising out of his October 17, 2005, conduct. There are numerous sources of information supporting the issue of whether [plaintiff] used or possessed and threatened the use of a deadly weapon during the commission of the crimes charged. While some information included the statements of Deputies Gaenzle and Smith, it was by no means limited to their statements.
>
> 6.     Even without the statements of Deputies Gaenzle and Smith regarding their observations of [plaintiff] with a weapon, there was sufficient probable cause from other information to conclude that [plaintiff] used and/or was armed with a deadly weapon during the time of the crimes charged and that the same charges relating to the use or possession and threatened use of a firearm would have been brought without the statements of Deputies Gaenzle and Smith. That information included, but was not limited to: [outlines the reports noted above] . . . .

(Docket No. 154-9 at 3).

Plaintiff contends that whether probable cause existed to charge him is a jury question which is not appropriate for resolution by summary judgment. In addition, plaintiff contends that "[b]ecause the Porter, Hall, Mileto, and Love statements all post-date Gaenzle's and Smith's reports, Mullaney's affidavit cannot be used to bolster Gaenzle's and Smith's reports since the statements played no part in their formulation of probable cause. Whether Gaenzle and Smith had probable cause to accuse Brooks of carrying a weapon at the time they wrote their reports is a jury question that boils down to Gaenzle's and Smith's word against [plaintiff], and one jury has already found

reason to doubt Gaenzle's and Smith's word." (Docket No. 157 at 34) (footnote omitted). Plaintiff also contends that "[t]here are legitimate reasons to question the Porter, Hall, Mileto, and Love statements" (Docket No. 157 at 35), and plaintiff also questions the credibility of Mullaney's affidavit (Docket No. 157 at 39). Plaintiff asserts:

> There are enough problems with the reliability of the evidence purporting to establish probable cause, with Mullaney's willfully half-baked analysis, her selective view of the evidence, and her resulting diminished credibility, to render probable cause and causation questions for the jury in this case. . . . Even if defendants attach a new affidavit to their reply in which Mullaney properly examines probable cause/causation under Taylor, the affidavit would simply create a question of fact concerning the credibility of the newly-rendered opinions. Accordingly, defendants' motion for summary judgment as to [plaintiff's] false reporting/"malicious prosecution" claim must be denied.

(Docket No. 157 at 42).

In response to plaintiff's arguments concerning the sufficiency of Mullaney's Affidavit because it does not address what her opinion may have been had there been a statement by defendants that plaintiff was unarmed at the time Gaenzle shot him, defendants assert that the court need not rely on Mulaney's opinions in this regard. Defendants contend that the court, as a matter of law, may perform the Taylor/Grubbs analysis, which they assert "leaves virtually no room for doubt as to the presence of probable cause, even removing the alleged false statements by the Defendants." (Docket No. 167 at 23).

Once again, this court notes that the plaintiff states in his Response that he claims that Gaenzle and Smith subjected him to a trial on false charges and placed him in jeopardy of an enhanced sentence and moreover that he is not claiming that Gaenzle's and Smith's false reporting led to his unreasonable seizure because plaintiff

was subject to arrest for his other crimes regardless of what Gaenzle and Smith reported. Therefore, the probable cause at issue here is whether there was probable cause to prosecute/try (not arrest) the plaintiff for the crimes charged and the sentencing enhancement. Consequently, the fact that the other reported statements outlined above were allegedly made after Gaenzle and Smith wrote their reports has no bearing on the probable cause determination now before the court.

Without relying on Mulaney's opinion, this court finds that even without Gaenzle's and Smith's statements that plaintiff possessed a weapon, there was sufficient probable cause to support the prosecution of plaintiff on the crimes charged and the sentencing enhancement under § 18-1.3-406, C.R.S., on the basis that he used or possessed a deadly weapon during the commission of the charged crimes. "If hypothetically correcting the misrepresentation or omission would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983 . . . ." Grubbs v. Bailes, 445 F.3d 1275, 1278 (10th Cir.), cert. denied, 127 S. Ct. 384 (2006). See Pierce v. Gilchrist, 359 F.3d at 1293 ("In the case of a Fourth Amendment claim of falsified evidence, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit."); Warren v. City of Cortez, 2007 WL 128808, at *4 (D. Colo. Jan. 12, 2007) (Plaintiff failed to state a viable claim of constitutional malicious prosecution premised on the allegation that officers deliberately gave false testimony, created distorted reports, and failed to make full and fair disclosure of the facts surrounding the incident. Plaintiff did not set forth facts from which it might reasonably be inferred that defendants' alleged actions were material to plaintiff's arrest and prosecution.").

Therefore, plaintiff's malicious prosecution claim fails.

Conspiracy Claim. In his response to defendants' summary judgment motion, plaintiff states that "[i]nsofaras [plaintiff] alleges conspiracy under § 1985(2), that claim may be dismissed. [Plaintiff's] § 1983 conspiracy claim is adequately supported by the record to withstand summary judgment." (Docket No. 157 at 44). Defendants correctly assert in their reply, however, that a review of the plaintiff's Second Amended Complaint demonstrates that plaintiff did not bring the conspiracy claim as a § 1983 claim, but plaintiff instead brought it only as a § 1985 claim. An amendment of the Second Amended Complaint would be untimely under the Scheduling Order in this case.

Moreover, the court further agrees with defendants that even if the plaintiff were permitted to maintain the conspiracy claim under § 1983, it should be dismissed because the plaintiff has failed to provide proof of a meeting of the minds between Gaenzle and Smith as to the drafting of their reports. "Allegations of conspiracy may . . . form the basis of a § 1983 claim. . . . However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants. . . . 'Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.'" Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998) (quoting Hunt v. Bennett, 17 F.3d 1263, 1266 (10th Cir. 1994)). See Jorgensen v. Montgomery, 2008 WL 216398, at *2 (D. Colo. Jan. 24, 2008) (citations omitted) ("[A] plaintiff must allege specific facts which show both an agreement to deprive the plaintiff of his legal rights, as well as concerted action among the defendants. . . . However, there is no requirement of an express agreement, nor must the conspirators know all of the details of the conspiracy."). "To establish a *prima facie* claim of conspiracy under 42 U.S.C. § 1983,

the Plaintiff must make a factual showing for each of the following elements: (1) a shared conspiratorial objective (the agreement to deprive the Plaintiff of a constitutional or statutory right); (2) concerted action by the Defendants; and (3) an actual deprivation of rights." Id. at *5 (citation omitted).

Here, plaintiff has provided no facts to support even an inference that some plan or joint action existed between the two defendants. Instead, in his response to the summary judgment motion, plaintiff merely states that "[a] conspiracy can be inferred from the fact that two people are claiming to see a gun that was not there" and that a conspiracy existed based on "Gaenzle's and Smith's efforts to fit their accounts of what happened to a false fact has resulted in their reports and statements being riddled with pervasive, irreconcilable inconsistencies." (Docket No. 157 at 43-44). Plaintiff has not made a showing of such "pervasive, irreconcilable inconsistencies." In any event, this court agrees with defendants that plaintiff's attempts to prove a conspiracy are nothing more than conclusory allegations which are insufficient to demonstrate a conspiratorial nexus. Therefore, plaintiff's conspiracy claim also fails.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that defendants' Motion for Summary Judgment (Docket No. 154) be granted.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive,**

or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


Date:      February 19, 2009         <u>s/ Michael J. Watanabe</u>
            Denver, Colorado           Michael J. Watanabe
                                    United States Magistrate Judge