**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 06-cv-01436-CMA-MJW

KEITH CLAYTON BROOKS, JR.,

      Plaintiff,

v.

STEVE GAENZLE, Individually and in His Official Capacity as Deputy;
PAUL SMITH, Individually and in His Official Capacity as Deputy;
TERRY MAKETA, Individually and in His Official Capacity as Sheriff;
EL PASO COUNTY SHERIFF'S DEPARTMENT; and
EL PASO COUNTY,

      Defendants.

---

**ORDER ADOPTING AND AFFIRMING FEBRUARY 19, 2009 RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

---

      This matter is before the Court on the Recommendation by the Magistrate Judge

that Defendants' Motion for Summary Judgment be granted (Doc. # 170).  Plaintiff

objected to the Recommendation.  (Doc. # 171.)  In light of Plaintiff's objections, the

Court has conducted the requisite *de novo* review of the issues, the Recommendation

and Plaintiff's objections.  Based on this review, the Court has concluded that the

Magistrate Judge's thorough and comprehensive analyses and recommendations are

correct.  Therefore, the Recommendation is AFFIRMED AND ADOPTED and

Defendants' Motion (Doc. # 154) is GRANTED.

## **FACTUAL BACKGROUND**

The Magistrate Judge described the facts of this case in his Recommendation and this Court will adopt and incorporate that description herein.  However, a brief recap of the facts will help explain the Court's decision.

On October 17, 2005, Plaintiff and Nick Acevedo broke into a house at 950 Lindstrom Drive, Colorado Springs, Colorado, with the intent to burglarize the home. (Doc. # 157 at 3.)  Neighbors called the police, and Defendants Gaenzle and Smith of the El Paso County Sheriff's Department arrived on the scene.  (*Id.*)  Defendants Gaenzle and Smith heard what sounded like two to three people talking inside the house, so the officers announced their presence and entered the garage.  (*Id.*) Defendants Gaenzle and Smith saw somebody in the garage, who quickly stood up, ran into the main portion of the house and blocked the door into the house with his body. (*Id.*)  As the officers tried to break down the door, a gunshot from inside the house pierced the door and barely missed the officers' heads and shoulders.  (*Id.*)  Defendants Gaenzle and Smith could not determine who fired the shot from inside the house.

The officers briefly left the garage to determine if either officer had been injured. (*Id.* at 4.)  While standing in the back yard, they observed a suspect flee the house and begin to climb a fence.  (*Id.*)  At the time, the officers did not know whether the fleeing suspect was the one who had just shot at them in the garage, or whether the fleeing suspect was another person from inside the house.  Defendant Gaenzle yelled "stop," but it is unknown whether the fleeing suspect heard him.  (*Id.* at 5.)  Defendant Gaenzle fired a shot at the fleeing suspect, which turned out to be Plaintiff.   Defendant Gaenzle's shot struck Plaintiff in the buttocks or lower back area, but Plaintiff continued

2

his flight and there is no evidence in the record that the shot even slowed Plaintiff's escape. (*Id.* at 4.)  Mr. Acevedo joined Plaintiff in running from the house and they both made it over the fence to a car parked nearby. (*Id.* at 5.)  Neither officer pursued the suspects over the fence. (*Id.*)

Police apprehended Plaintiff on October 20, 2005, after chasing him from a Colorado Springs mall parking lot to a nearby home. (Doc. # 154, Ex. A-7.)  Police shot and killed Mr. Acevedo thirteen days later in a gunfight. (Doc. # 157 at 9.)  Mr. Acevedo died holding the gun used to fire through the garage door at 950 Lindstrom Drive. (*Id.*)

Plaintiff alleges that he never used or possessed a weapon during the burglary of 950 Lindstrom.  However, Defendants Gaenzle and Smith both reported that they saw a gun in Plaintiff's possession as he fled the house.  Moreover, Defendants Gaenzle and Smith stated that they had no way of knowing whether it was Plaintiff who shot at them through the door, or whether Mr. Acevedo pulled the trigger.  Other investigators also concluded that Plaintiff had a weapon during the burglary, but Plaintiff disputes these findings.

The District Attorney charged Plaintiff with:  (1) criminal attempt to commit murder in the first degree, after deliberation, of a police officer; (2) criminal attempt to commit murder in the second degree; (3) assault in the first degree; (4) first degree burglary – assault or menace; (5) first degree burglary – deadly weapon; (6) menacing; and (7) possession of a weapon by a felon. (*Id.*)  The jury convicted Plaintiff of all charges except number seven, the weapons possession charge. (*Id.* at 5.)  The jury also found specifically that Plaintiff did not use or possess a firearm and, thus, was not eligible for a sentence enhancement under C.R.S. § 18-1.3-406. (*Id.*)

## PROCEDURAL BACKGROUND

The operative complaint, Plaintiff's Second Amended Complaint (Doc. # 50), alleges four claims for relief against Defendants Gaenzle, Smith, Sheriff Terry Maketa, the El Paso County Sheriff's Department, and El Paso County.  Plaintiff alleges (1) a violation of 42 U.S.C. § 1983 based on Defendants Gaenzle and Smith's use of excessive force in "seizing" Plaintiff during the burglary; (2) assault and battery; (3) a violation of 42 U.S.C. § 1983 & 1985 based on Defendants Gaenzle and Smith's alleged conspiracy to make false reports to justify their use of force and prosecution of Plaintiff; and (4) a violation of 42 U.S.C. § 1983 against Defendants Maketa, the Sheriff's Department, and the County for developing and maintaining unconstitutional policies regarding the use of force.  However, the parties stipulated to the dismissal of the claims against Defendant Maketa, the Sheriff's Department, and the County. (Doc. ## 152 and 156.)  Thus, only the claims against Defendants Gaenzle and Smith remain.

Defendants Gaenzle and Smith moved for summary judgment on all of Plaintiff's claims.  (Doc. # 154.)  The parties briefed the Motion and the Magistrate Judge recommended that this Court grant the Motion.  (Doc. # 170.)  Plaintiff filed twelve timely objections (Doc. # 171) and Defendants filed a response to those objections. (Doc. # 172.)

## STANDARDS OF REVIEW

Two standards of review are at issue – the standards for a district court's review of a magistrate judge's recommendation and a motion for summary judgment.

## I.    DISTRICT COURT REVIEW UNDER RULE 72(b)

Pursuant to Federal Rule 72(b), a magistrate judge may recommend disposition of a dispositive motion or prisoner petition.  Fed. R. Civ. P. 72(b)(1).  A party may then file "specific written objections to the proposed findings and recommendations" within ten days of the date of service of the recommendation.  Fed. R. Civ. P. 72(b)(2).  The district judge must then resolve the objections using a *de novo* standard of review regarding those portions of the recommendation that have "been properly objected to."  Fed. R. Civ. P. 72(b)(3); *see also generally In re Griego*, 64 F.3d 580 (10th Cir. 1995) (discussing *de novo* review of magistrate judge's recommendations).  As to the magistrate judge's recommendations or findings for which a party makes no specific objection, the district court still must satisfy itself that no clear mistake of law or fact has occurred.  *See Campbell v. U.S. Dist. Ct.*, 501 F.2d 196, 206 (9th Cir. 1974).

When conducting a *de novo* review, the district court makes its own decisions regarding disputed issues.  *See Dotson v. Zenon*, 549 F. Supp. 2d 1291, 1297 (D. Colo. 2008) (citing and quoting *Branch v. Matin*, 886 F.2d 1043, 1046 (8th Cir. 1989)).  However, the district court need not entirely ignore the magistrate judge's recommendations.  91 C.J.S. *United States Magistrates* § 9.  Nor must the district court mechanically spell out each reason for accepting or rejecting a party's objections.  *See Garcia v. City of Albuquerque*, 232 F.3d 760, 766-67 (10th Cir. 2000).

## II.    MOTION FOR SUMMARY JUDGMENT

Courts should grant summary judgment if the record indicates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.*, 938 F.2d 1105, 1110-11 (10th Cir. 1991); *Devery Implement Co. v. J.I. Case Co.*, 944 F.2d 724, 726 (10th Cir. 1991).  The moving party bears the initial burden of demonstrating the lack of an issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must respond with evidence sufficient to create a genuine issue of material fact for trial.  *Id.* at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To overcome a motion for summary judgment, the non-moving party must present enough evidence to allow a reasonable jury to find in its favor.  *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).  In analyzing the evidence on a motion for summary judgment, a court should view the factual record and draw reasonable inferences in favor of the non-moving party.  *Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1995).

## ANALYSIS

Plaintiff presented four claims for relief.  In his first claim, Plaintiff contends that Defendants Gaenzle and Smith violated his Fourth and Fourteenth Amendment rights by using excessive force in attempting to seize Plaintiff as he fled 950 Lindstrom.  *See* U.S. Const. amend. IV; *Tennessee v. Garner*, 471 U.S. 1 (1985).

## I.   CLAIM ONE – FOURTH AMENDMENT

To prevail on his Fourth Amendment claim, Plaintiff must show:  (1) that a seizure occurred and (2) that force used in making the seizure was unreasonable.

*See Brower v. County of Inyo*, 489 U.S. 593, 599 (1989); *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994).

        A.      <u>Fourth Amendment – Applicable Law</u>

        1.     *Seizure*

There is no bright line test for determining when a seizure occurs under the Fourth Amendment.  Regardless of the exact test applied, a seizure can only occur if the government's actions somehow restrain the movement of the suspect.  *See, e.g., Brower*, 489 U.S. at 595-96 (focusing on the "termination of [the suspect's] movement"); *Garner*, 471 U.S. at 7 ("Whenever an officer restrains the freedom of a person to walk away, he has seized that person."); *Bella*, 24 F.3d at 1255 (the Supreme Court "expressly stated that an assertion of authority by the police without submission by the fleeing person does not constitute a seizure").  For a seizure to occur, the government does not have to literally stop the suspect in his tracks or freeze him in place.  But, the plain meaning of the word seizure and various Supreme Court interpretations indicate that the government must do something that gives it the opportunity to control the suspect's ability to evade capture or control.  *See Brower*, 489 U.S. at 595-96 ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."); Merriam-Webster's Online Dictionary (to seize means:  "to take possession of . . . to take hold of") (last accessed on September 24, 2009).  In other words, the government must have substantially precluded the suspect's ability to loose himself from the government's control.

Thus, an attempt to subdue a suspect by, for example, shooting at and striking his vehicle, but failing to seriously encumber the suspect's ability to flee or evade

restraint, does not amount to a seizure for purposes of the Fourth Amendment. *Bella*, 24 F.3d at 1256 (shots that hit fleeing helicopter but did not cause suspect to "submit" to government agents or "otherwise succeed in stopping him" did not constitute a seizure); *see also California v. Hodari*, 499 U.S. 621, 628-29 (1991) (no seizure during course of foot chase because government "'show of authority' did not produce his stop").  Even the supplemental authority cited by Plaintiff, *Lemery v. Beckner*, 323 Fed. Appx. 644 (April 14, 2009 10th Cir.), requires a suspect to establish that the government caused a termination of his movement before the Fourth Amendment is implicated. *Id.* at *5 (noting that plaintiff in that case was "momentarily stopped before running away").

2.     *Reasonableness*

Regarding the second element, a seizure is only unlawful if the force used to obtain it is objectively unreasonable.  *See Scott v. Harris*, 550 U.S. 372, 127 S. Ct. 1769, 1776 (2007); *Brower*, 489 U.S. at 599.  A seizure brought about by the use of deadly force is also subject to the reasonableness test of the Fourth Amendment. *Ryder v. City of Topeka*, 814 F.2d 1412, 1416-17 (10th Cir. 1987).  Whether the force used to obtain a seizure is constitutionally reasonable depends on the balance between "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner*, 471 U.S. at 8.

The Tenth Circuit Court of Appeals has previously had the opportunity to discuss a scenario when the use of deadly force to apprehend a fleeing suspect might pass the reasonableness test.  *Ryder*, 814 F.2d 1416-17.  The basic formulation deduced by the Tenth Circuit Court of Appeals was that police officers may reasonably use deadly force

to apprehend a fleeing suspect if the officers "have probable cause to believe that the suspect poses a threat of serious physical harm to the officer or to others." *Id.* at 1418. The Tenth Circuit Court of Appeals went on to highlight two situations that might meet this standard: (1) "if the suspect threatens the officer with a weapon or [2] there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm. . . ." *Id.*

The reasonableness of the use of force to obtain a seizure must viewed from the perspective of a reasonable officer on the scene, rather than with the benefit of hindsight. *See Graham v. Connor*, 490 U.S. 386, 396 (1989). Courts should recognize that police officers often face tense, uncertain, and rapidly-evolving situations during which the officers must make life or death decisions in less than ideal circumstances. *Graham*, 490 U.S. at 397.

B.      No Seizure Occurred In This Case

The Magistrate Judge recommends that this Court enter summary judgment on Plaintiff's first claim because the Magistrate Judge concluded that no Fourth Amendment seizure had occurred. (Doc. # 170 at 7-8.) Plaintiff objects to this recommendation. He argues that a seizure occurs when the government applies any physical force to a suspect, regardless of whether the suspect escapes. Plaintiff is incorrect.

In this case, Defendant Gaenzle shot and struck Plaintiff, but Plaintiff managed to climb the fence and elude arrest for three days. Indeed, none of the evidence in the record reflects that Defendant Gaenzle's shot even temporarily halted Plaintiff in his

escape from 950 Lindstrom.  In short, Defendant Gaenzle's gunshot amounted to nothing more than an attempted seizure, which does implicate the Fourth Amendment.

The cases cited by Plaintiff do not change this result and in fact support it.  For example, Plaintiff cites *Lemery* and argues that the Fourth Amendment is implicated anytime a police officer shoots a suspect.  However, the key fact in *Lemery* was not the shooting, but the temporary restriction on the suspect's movement caused by the shot.  In contrast, no temporary restriction of Plaintiff's movement occurred in this case.

Plaintiff also cites dicta in *Bella* as support for the proposition that shooting a fleeing suspect automatically constitutes a Fourth Amendment seizure.  However, this dicta is tempered by the context of the statement in that case, which indicates that shooting a suspect is only a seizure if it causes the suspect to "submit to this show of authority."  *Bella*, 24 F.3d at 1255.  Footnote six in *Bella* also undercuts the persuasiveness of Plaintiff's argument.  That footnote states:  "We note, however, that it may not be a foregone conclusion that a Fourth Amendment 'seizure' would have occurred even had the officer's shot accidentally hit Mr. Bella."  24 F.3d at 1256 n.6.

The facts of this case are also distinguishable from the facts in *Garner*, *Brower*, and *Cole v. Bone*, 993 F.2d 1328 (8th Cir. 1993).  In *Garner*, the police officers shot and killed an unarmed, fleeing suspect.  Because the shot immediately subdued the suspect, the issue of whether the government had seized the fleeing suspect was not in dispute.  471 U.S. at 3.  In *Brower*, the police stopped a fleeing suspect by causing the suspect's car to collide with a roadblock that police had placed behind a blind curve in the middle of the night.  The collision killed the suspect.  A similar scenario occurred in *Cole*, wherein police stopped a fleeing suspect, who was behind the wheel of a tractor-

trailer rig, by shooting and killing the suspect.  Each of these decisions held that a Fourth Amendment seizure had occurred only upon termination of the fleeing suspects' movement.

The *Cole* court made especially clear that previous attempts by police to use physical force to stop the suspect (*e.g.,* rolling roadblocks and shooting out the tires) did not produce a Fourth Amendment seizure.  Only after police had restricted the suspect's movement did the court conclude that a seizure had occurred.  993 F.2d at 1332.

The holdings in these cases would likely have been different if the fleeing suspects had, as was the situation in this case, survived their respective encounters with the police and eluded arrest by escaping from the scene.  *See, e.g., Bella*, 24 F.3d at 1255-56.  Conversely, the outcome in this case would likely be different if Defendant Gaenzle's shot hobbled or injured Plaintiff, thereby preventing him from climbing over the fence and escaping with Mr. Acevedo.  But, it appears that the gunshot, although it presumably Plaintiff pain or slowed the pace of his escape did not bring Plaintiff within the government's possession or control.  *See Cole*, 993 F.2d at 1332 ("The pursuit in and of itself did not constitute a seizure, because it did not produce a stop.")  Indeed, Plaintiff still had enough spring in his step to evade police in the mall parking lot days later.

Defendant Gaenzle's gunshot may have injured Plaintiff, but it clearly did not "produce his stop" or "terminate [his] movement."  Therefore, the Magistrate Judge correctly found that there was no seizure for purposes of the Fourth Amendment.[1]

C.    Reasonable Force Under the Fourth Amendment

Assuming *arguendo* that Plaintiff could prove that a seizure occurred, the Magistrate Judge recommends that Defendants are nonetheless entitled to summary judgment because Plaintiff could not raise a question of fact on the issue of whether Defendants used a reasonable degree of force in attempting to apprehend Plaintiff. Plaintiff makes numerous objections to this finding, but the basic thrust of his objections is that questions of fact remain regarding the reasonableness of Defendant Gaenzle's use of deadly force.  However, the Court concludes that Plaintiff's objections should be overruled because they are either unsupported by the evidence or misapply the law.

A quick reiteration of certain facts will help elucidate the Court's decision on this issue.  As noted above, a jury convicted Plaintiff of six different charges, including criminal attempt to commit murder in the first degree, after deliberation, of a police officer, criminal attempt to commit murder in the second degree, and first degree burglary – deadly weapon.  Further, it is undisputed that either Plaintiff or Mr. Acevedo fired a gunshot at Defendants, spraying Defendants with shrapnel and barely missing the officers' heads.  It is also undisputed that Plaintiff and Mr. Acevedo quickly fled the

---

[1]   This conclusion dooms Plaintiff's first claim.  However, because the Magistrate Judge also addressed additional elements of the claim and because Plaintiff has filed objections to the Magistrate Judge's additional conclusions, the Court will likewise address the Magistrate Judge's additional findings and Plaintiff's corresponding objections.

house through the backyard without Defendants knowing who had fired the shot at them.

       1.    *Plaintiff's conviction supports Defendant Gaenzle's use of deadly force*

Relying on *Ryder*, the Magistrate Judge concluded that, at the time Defendant Gaenzle shot him, Plaintiff was involved in the commission of an inherently violent crime and, therefore, Defendant Gaenzle was justified in using deadly force.  (Doc. # 170 at 8-9.)  The Magistrate Judge also concluded that Defendant Gaenzle acted reasonably because, under the circumstances, a reasonable officer in Defendant Gaenzle's position would have feared for his safety and the safety of other people. Thus, the Magistrate Judge found that Defendant Gaenzle's use of force was reasonable as a matter of law.

The Magistrate Judge buttressed his conclusions by pointing out that a jury convicted Plaintiff of six out of seven charges relating to the burglary.  Plaintiff argues that the Magistrate Judge should not have relied on the criminal convictions because Plaintiff did not actually participate in the violent acts for which he was convicted, but merely acted in complicity with Mr. Acevedo.  Thus, Plaintiff contends that *Ryder* does not apply.  Plaintiff also argues that because the jury acquitted him of possession of a weapon, the Magistrate Judge should not have used the criminal convictions to support the finding that Plaintiff acted violently.

The Court finds Plaintiff's objections on this issue unpersuasive.  *Ryder* states that officers may reasonably use deadly force when they have probable cause to believe that a suspect "has committed a crime involving the infliction or threatened infliction of serious physical harm."  814 F.2d at 1418.  That is the situation in this case

– Defendants Gaenzle and Smith had just been shot at while investigating a home

burglary.  Thus, they had probable cause to believe that Plaintiff and Mr. Acevedo had

"committed a crime involving the . . . threatened infliction of serious physical harm."

Plaintiff contends that he played an insignificant role in the crimes for which he was

convicted, but *Ryder* does not stand for the proposition that the suspect must actually

carry the gun, do the shooting, or otherwise threaten the serious harm in the

commission of the crime to justify the officer's use of deadly force.

Plaintiff does not dispute that he played at least some role in the burglary or that

the burglary involved the potential for serious physical harm.  Regardless of who the

instigator of the burglary and the attempted murder was, Plaintiff or Mr. Acevedo,

Plaintiff cannot dispute that he was "involved."  Plaintiff's undisputed involvement in the

crime – a crime in which two police officers were nearly shot in the face by an unknown

assailant – is sufficient to justify the use of deadly force by Defendants.  Plaintiff

would have the Court believe that he was merely an innocent pawn caught up in

Mr. Acevedo's violent rampage, but the criminal conviction proves that was not the

situation.  In short, there is no legal reason that the Magistrate Judge could not rely

on Plaintiff's convictions to support his factual finding that Plaintiff committed a crime

involving the threatened infliction of serious physical harm.

2.   *Factual disputes do not preclude summary judgment*

Defendant Gaenzle stated in deposition that his belief that Plaintiff possessed

a handgun was critical to his decision to use deadly force in attempting to apprehend

Plaintiff.  Relying on this testimony, Plaintiff contends that the Magistrate Judge erred

in concluding that the disputed fact of whether Plaintiff possessed a handgun was not material to the objective reasonableness of Defendant Gaenzle's use of force.

However, the Court concludes this factual dispute does not require rejection of the Magistrate Judge's Recommendation.  In objecting on this ground, Plaintiff improperly converts the objective standard for use of force into a subjective standard. As noted above, the reasonableness of an officer's use of force must be judged based on the totality of the circumstances from the viewpoint of a reasonable officer. Defendant Gaenzle's own impressions of the scene are helpful in this determination, but not dispositive.  Thus, the fact that Defendant Gaenzle testified at his deposition that his belief that Plaintiff possessed a gun was determinative to Detective Gaenzle's subjective decision to shoot does not require the Court to reject the Magistrate Judge's conclusion because other facts reflect that a reasonable officer would have been justified in using deadly force under the circumstances.

In other words, enough undisputed facts exist in the record to support Defendant Gaenzle's decision notwithstanding his own subjective impression of the situation.  For example, both officers had just been shot at by either Plaintiff or Mr. Acevedo and the officers faced the prospect of chasing multiple home burglary suspects through a back yard with no knowledge of who else might have still been in the house or waiting around the corner.  Perhaps if the burglary had unfolded more slowly or if the officers had seen that Mr. Acevedo fired the shot into the garage, a reasonable police officer in Defendant Gaenzle's position would have waited to see which one of the two fleeing suspects did the shooting before responding with reciprocal deadly force.  But, that is not the situation in this case and the Court agrees with the Magistrate Judge that under the

15

circumstances of this case, it would be reasonable for an officer in Defendant Gaenzle's shoes not to wait to be shot at again or wait for Mr. Acevedo to hand the gun to Plaintiff as they ran through the back yard.

Thus, the Court agrees with the Magistrate Judge that Defendants' use of force under the circumstances was reasonable.  As such, the Court overrules Plaintiff's objections to the Magistrate Judge's recommendation on this issue.

     D.    <u>Qualified Immunity</u>

Having found that no constitutional violation occurred, the Magistrate Judge recommended that Plaintiff's first claim be dismissed under the doctrine of qualified immunity.  Plaintiff objects to the Magistrate Judge's recommendation this issue, as well.

     1.    *Applicable Law – Qualified Immunity*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, ___ U.S. ___, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity is more than a defense to liability, it is immunity from suit, so courts should rule on the issue as early as possible in the litigation to avoid mistakenly permitting a defendant to suffer the burdens of discovery and/or trial.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (qualified immunity is "immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial"); *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001) (noting that courts should resolve the "purely legal question raised by

a qualified immunity defense at the earliest possible stage in litigation") (internal quotations and citations omitted).

When a defendant raises qualified immunity, the burden of proof shifts to the plaintiff to make a twofold showing to overcome immunity.  *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000) (citing *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000)).  The plaintiff must show that:  (1) when the facts are viewed in a light favorable to the plaintiff, the defendant's actions violated a constitutional or statutory right; and (2) the constitutional or statutory right was clearly established at the time of the conduct at issue.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part on other grounds by Pearson*, 129 S. Ct. 808; *see also Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (describing plaintiff's two-part burden to overcome qualified immunity); *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) ("First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  If so, we must subsequently ask whether the right was clearly established.") (internal citations, quotations, and alterations omitted); *Scull*, 236 F.3d at 595 (same).  Only if the plaintiff can meet this two-part showing, will the "defendant bear the traditional [summary judgment] burden of showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'"  *Scull*, 236 F.3d at 595 (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)); *see also Olsen*, 312 F.3d at 1312 ("In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense.").

2.    *Plaintiff's objections regarding qualified immunity*

The Magistrate Judge concluded that Plaintiff could not show either that a

seizure occurred or that Defendants used an unreasonable degree of force.  Thus,

the Magistrate Judge found that Plaintiff could not meet the first prong of his qualified

immunity burden to show a violation of his Fourth Amendment rights and the Magistrate

Judge did not address the second prong of the qualified immunity analysis.

Plaintiff objects to the Magistrate Judge's qualified immunity analysis.  Plaintiff

argues that the Magistrate Judge erred in concluding that *Garner* does not apply in this

case.  However, Plaintiff's objection regarding the Magistrate Judge's decision not to

follow *Garner* is a red herring that the Court declines to follow.  Plaintiff begins this

objection by assuming that Defendant Gaenzle's deposition testimony establishes a

constitutional violation.  Plaintiff would then have the Court apply *Garner* to show that

Plaintiff had a recognized constitutional right to be free from the use of excessive force.

However, the Court has already rejected the notion that Defendant Gaenzle's deposition

testimony establishes a constitutional violation and the second prong of the qualified

immunity analysis is not at issue in this case.  Thus, this objection merely rehashes the

arguments that Plaintiff raises regarding the reasonableness of Defendants' use of

force, arguments that the Court found unpersuasive.

Plaintiff also argues that the Magistrate Judge erred in deciding as a matter of

law whether Defendant Gaenzle acted in an objectively reasonable manner when he

shot Plaintiff in the back.  In essence, Plaintiff contends that the question of whether

an officer uses reasonable force is a question of fact that must be reserved for trial.

However, Defendants are presumed to be immune and Plaintiff bears the burden to

come forward with evidence establishing the need for a trial; a burden the Court

concludes Plaintiff has not met.  Moreover, whether Defendants are entitled to qualified

immunity is a "purely legal question" that this Court should answer as early as possible

in the litigation.  *See Medina*, 252 F.3d at 1127.  Indeed, not one of the cases cited by

Plaintiff stands for the proposition that determinations regarding reasonableness of the

use of force must always be reserved for trial.  Instead, Plaintiff's objections on this

issue rest on the premise that the Magistrate Judge erred in concluding that Defendant

Gaenzle acted in an objectively reasonable manner.  But, for the reasons described

above, the Court has already rejected that premise, so the Court will overrule this

objection, as well.

For each of the reasons described above, the Court concludes that the

Magistrate Judge correctly recommended summary judgment on Plaintiff's first claim.

## II.    CLAIM TWO – ASSAULT AND BATTERY

In his second claim, Plaintiff alleges that Defendant Gaenzle assaulted and

battered him.  Defendants moved for summary judgment pursuant, in part, to C.R.S.

§ 13-80-119, which limits a plaintiff's ability to recover damages for injuries sustained in

the immediate flight from the commission of a felony.  The Magistrate Judge agreed

with Defendants and recommended that this Court grant summary judgment.  Plaintiff

objects to this recommendation by referencing his other substantive objections.

Colorado law limits a plaintiff's ability to recover damages for injuries sustained

during or immediately following the commission of a felony.  *See* C.R.S. § 13-80-119;

*Molnar v. Law*, 776 P.2d 1156 (Colo. Ct. App. 1989).  Section 13-80-119 states in part:

(1)   No person, his or her estate, or his or her personal representative shall have a right to recover damages sustained during the commission of or during immediate flight from an act that is defined by any law of this state or the United States to be a felony, if the conditions stipulated in this section apply.

(2)(a)   The court shall dismiss the action for damages and award attorney fees and costs to the person against whom the action was brought if the person bringing the action, on whose behalf an action has been brought, or in the case of a wrongful death action, the decedent, has been convicted of the felony or has been adjudicated a delinquent as a result of the commission of the act, unless the damage was caused by the willful and deliberate act of another person; except that such exception shall not apply if the person who caused the injuries acted:

(I)   Under a reasonable belief that physical force was reasonable and appropriate to prevent injury to himself or herself or to others, using a degree of force that he or she reasonably believed necessary for that purpose; or

(II)   Under a reasonable belief that physical force was reasonable and appropriate to prevent the commission of a felony, using a degree of force that he or she reasonably believed necessary for that purpose; or

(III)   As a peace officer, as such person is described in section 16-2.5-101, C.R.S., acting within the scope of the officer's employment and acting pursuant to section 18-1-707, C.R.S.

C.R.S. § 13-80-119.

In this case, a jury convicted Plaintiff of multiple felonies and Plaintiff was fleeing from the scene of the felonious acts when Defendant Gaenzle shot him.  The Magistrate Judge also correctly concluded that Defendant Gaenzle used a reasonable degree of force.  Thus, the Court concludes that the prerequisites of section 13-80-119 have been met.

Although Plaintiff again objects by arguing that the Magistrate Judge erred in finding that Defendant Gaenzle used a reasonable degree of force under the

circumstances, for the reasons described above, the Court has rejected Plaintiff's

argument on this issue.  Thus, in applying C.R.S. § 13-80-119, the Magistrate Judge

correctly recommended that Plaintiff's assault and battery claim be dismissed.

## III.   CLAIM THREE – FALSE STATEMENTS/MALICIOUS PROSECUTION

Plaintiff's third claim alleges that Defendants Gaenzle and Smith violated

Plaintiff's due process rights by conspiring to and intentionally making false statements

to justify charging Plaintiff with possession of a weapon and seeking a sentence

enhancement based on the use of a weapon under C.R.S. § 18-1.3-406.  Plaintiff takes

issue with statements by Defendants Gaenzle and Smith that Plaintiff had a gun as he

ran through the back yard after the burglary.

Analyzing this claim under a Due Process framework, rather than a Fourth

Amendment framework, the Magistrate Judge found that a factual dispute existed

relating to whether Defendants Gaenzle and Smith actually made the false statements.

However, the Magistrate Judge concluded that the factual dispute was immaterial

because probable cause existed to try Plaintiff on the weapon charge and seek the

sentencing enhancement, regardless of any statements Defendants Gaenzle and

Smith.  Therefore, the Magistrate Judge recommended that this Court grant summary

judgment in favor of Defendants.

A.      Applicable Law – Malicious Prosecution

A malicious prosecution claim under section 1983, like that asserted by Plaintiff

in this case, has five elements.  A plaintiff must show that (1) the defendant caused the

plaintiff's prosecution; (2) the original action terminated in the plaintiff's favor; (3) there

was no probable cause to support the prosecution; (4) the defendant acted with malice;

and (5) the plaintiff sustained damages.  *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1257-58 (10th Cir. 2007).

The critical issue in this case is whether, given the potential falsity of Defendants' statements that Plaintiff possessed a gun, probable cause existed to prosecute Plaintiff on the weapon charge and seek the sentencing enhancement.  When a false statement, misrepresentation, or omission forms part of the information supporting probable cause on which a defendant is prosecuted, in a subsequent malicious prosecution claim, the court should attempt to correct the false statement, misrepresentation, or omission and then reevaluate whether probable causes exists with the corrected information in the hypothetical record.  *See Grubbs v. Bailes*, 445 F.3d 1275, 1278 (10th Cir. 2006) ("If hypothetically correcting the misrepresentation or omission would not alter the determination of probable cause, the misconduct was not of constitutional significance and is not actionable under § 1983, but if this hypothesizing would alter the probable-cause determination, the misconduct undermined Fourth Amendment guarantees and may support redress under § 1983.") (citations omitted); *see also Taylor v. Meacham*, 82 F.3d 1556, 1560-62 (10th Cir. 1996) (same).

B.     Probable Cause

In support of his recommendation that probable cause existed regardless of Defendants' allegedly false statements, the Magistrate Judge points to numerous police reports that purportedly establish that Plaintiff possessed a gun on the day of the burglary.  For example, Detective G. Cliff Porter reported that Plaintiff had admitted to

carrying a 9mm pistol on the day of the burglary;[2] Detective Ralph Losasso reported an interview he had with Amanda Hall during which Ms. Hall stated that she saw Plaintiff sitting in the back of a car with a rifle in his hands on the day of the burglary and that Plaintiff told her that he shot at police as he and Mr. Acevedo attempted to flee the scene;[3] Detective Michael Simler reported an interview he conducted with Daniel Mileto, an accomplice of Plaintiff and Mr. Acevedo's after the burglary, during which Mr. Mileto told Detective Simler that Plaintiff admitted to firing on police during the burglary.  These reports are supported by investigative reports from the District Attorney's office that contained numerous statements by Ms. Hall and Mr. Mileto that Plaintiff admitted to shooting at the officers during the burglary.  The Magistrate Judge also described an affidavit from Assistant District Attorney Amy Mullaney regarding the decision to charge plaintiff with the weapon charge and seek the sentencing enhancement, although the Magistrate Judge did not rely on the affidavit in making his recommendation.[4]

Plaintiff objects and argues that the Magistrate Judge erred by disregarding the potential effect that honest statements by Defendants might have had on the subsequent investigation and determination of probable cause to charge Plaintiff with possession of a weapon.  Plaintiff contends that if Defendants had made honest statements, the entire tenor of the investigation would have changed and Plaintiff

---

[2]  Plaintiff later recanted on his admission that he was carrying a pistol.

[3]  Detective Losasso's report of his interview with Ms. Hall is corroborated by a report from Detective Ricky Frady.

[4]  Ms. Mullaney stated that the decision to charge Plaintiff with the weapon charge and seek the sentencing enhancement were based on multiple sources of information and that Defendants Gaenzle and Smith's statements were immaterial to that decision.

would not have been charged with possession of weapon or subject to the sentencing enhancement.  In other words, Plaintiff contends that the Magistrate Judge should not have simply removed Defendants' statements from the determination of probable cause, but should also have looked at probable cause in light of the effect that hypothetical statements by Defendants that Plaintiff did not have a gun during the burglary might have had on the investigation.

The Court disagrees with Plaintiff.  In determining whether probable cause existed to charge Plaintiff with possession of a weapon and seek the sentencing enhancement, the Magistrate Judge correctly removed Defendants' allegedly false statements from the probable cause analysis.  Even when Defendants' potentially false statements are removed from the analysis, sufficient evidence to give the DA probable cause to charge Plaintiff with possession of a gun on the day of the burglary remains.

Plaintiff's theory that honest statements by Defendants would have resulted in a completely different investigation is unsupported speculation.  Indeed, why would Ms. Hall, Mr. Mileto, and other witnesses change their tune simply because the investigators no longer operated under the impression that Plaintiff (rather than Mr. Acevedo) held the gun and/or did the shooting on the day of the burglary? Presumably, in a case where there is a question of fact regarding whether Plaintiff or his accomplice fired a shot blindly at Defendants' faces, the investigators would ask similar questions of their witnesses regarding Plaintiff's possession of a gun regardless of whether Defendants thought Plaintiff or Mr. Acevedo held the gun as they escaped through the back yard.

In short, even acknowledging the factual dispute over Defendants' statements, too much additional evidence exists to support probable cause to charge Plaintiff with possession of a weapon and seek a sentencing enhancement.  Thus, the Court agrees with the Magistrate Judge's recommendation to grant summary judgment.

B.    Conspiracy

The Magistrate Judge recommended that Plaintiff's conspiracy claim be dismissed because Plaintiff failed to plead conspiracy under section 1983 or provide any evidence raising a triable issue of fact on the elements of a conspiracy claim.  Plaintiff objects and contends that he has satisfied the notice pleading standards and provided facts that preclude summary judgment.

Regardless of the pleading issue, the Court concludes that the Magistrate Judge correctly determined that Plaintiff failed to raise a triable issue of fact on the necessary elements of a conspiracy claim.  To survive summary judgment on this claim, Plaintiff must present evidence raising a triable issue of fact on three elements:  (1) a shared conspiratorial objective, *i.e.*, an agreement to deprive Plaintiff of his constitutional or statutory rights; (2) concerted action; an (3) actual deprivation of rights.  *See Snell v. Tunnell*, 920 F.2d 673, 701-02 (10th Cir. 1990).  Plaintiff need not prove an express agreement among Defendants to establish a conspiracy.  *See id.* at 702; *see also Jorgenson v. Montgomery*, 2008 WL 216398, * 2 (D. Colo. Jan. 4. 2008).  However, to survive summary judgment, Plaintiff must come forward with facts instead of unsupported allegations.  *Matsushita* 475 U.S. at 586-87.

In this case, Plaintiff contends that the Affidavit of Dan Montgomery raises issues of fact regarding whether Defendants shared a conspiratorial objective and acted in

concert.  However, the Montgomery affidavit only states that inconsistencies existed

within Defendants Gaenzle and Smith's reports.  However, Plaintiff's vague claim that

inconsistencies exist between Defendants' reports does not raise a triable issue of fact

on either the shared objective element or the concerted action element.  Thus, the

Montgomery affidavit does not suffice to move the conspiracy claim beyond summary

judgment.

## **CONCLUSION**

Upon a *de novo* review of the issues raised by Plaintiff's objections, the Court

concludes that the Magistrate Judge correctly analyzed Defendants' Motion for

Summary Judgment.

Accordingly, the Recommendation on Defendants' Motion for Summary

Judgment (Doc. 170) is AFFIRMED AND ADOPTED; and

Defendants' Motion for Summary Judgment (Doc. # 154) is GRANTED.

DATED:  September   29  , 2009

BY THE COURT:

_____

CHRISTINE M. ARGUELLO
United States District Judge